## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| EXPEDITORS INTERNATIONAL OF WASHINGTON, INC., | * | |
| Plaintiff, | * | |
| v. | * | |
| | | Civil No. 25-2902-BAH |
| EZR PACKING CORP., ET AL., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

Plaintiff Expeditors International of Washington, Inc. ("Expeditors" or "Plaintiff") brought suit against EZR Packing Corporation ("EZR") and Yehi Yul Melamed ("Melamed") (together "Defendants") alleging defamation (Count V) and tortious interference with business relationships (Count VI). ECF 59 (amended complaint).[1] Plaintiff also brought breach of contract (Count I), unjust enrichment (Count II), trover and conversion (Count III), and tortious interference with contract (Count IV) claims against EZR only. *Id.* EZR brought counterclaims against Expeditors alleging fraud (Count I) and unjust enrichment (Count II). ECF 65. Pending before the Court are four motions: Defendants' motion to dismiss, ECF 64; Expeditors' partial motion to dismiss EZR's counterclaims, ECF 70; EZR's motion for disbursement of funds from the registry, ECF 73; and Expeditors' cross-motion for release of funds, ECF 76. This memorandum opinion also addresses the Court's March 11, 2026 order requiring EZR to have new counsel enter an appearance on its

---

[1] The original complaint is docketed at ECF 1.

behalf or, alternatively, to show cause why default should not be entered against it and its counterclaims dismissed. ECF 84.

Several responses and replies have been filed to the pending motions. *See* ECF 67 (Expeditors' opposition to ECF 64); ECF 72 (Defendants' reply); ECF 74 (EZR's opposition to ECF 70); ECF 78 (Expeditors' opposition to ECF 73); ECF 79 (EZR's reply)' ECF 80 (EZR's opposition to ECF 76); ECF 81 (Expeditors' reply). All filings either include or incorporate separately filed memoranda of law, *see, e.g.*, ECF 71 (memorandum in support of ECF 70); ECF 77 (memorandum in support of ECF 76), and some filings include exhibits.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Defendants' motion to dismiss, ECF 64, is **GRANTED** in part and **DENIED** in part; EZR's motion for disbursement of funds, ECF 73, is **DENIED**; and Expeditors' cross-motion for release of funds, ECF 76, is **DENIED** as moot. Default is **ENTERED** against EZR and its counterclaims are **DISMISSED**. The motion to dismiss the counterclaims, ECF 70, is **DENIED** as moot.

## I.    BACKGROUND

This case arises from a contentious business relationship involving a warehouse facility in Belcamp, Maryland (the "Facility").[3] Plaintiff Expeditors is incorporated in and has its principal place of business in Washington state; EZR is incorporated in New York with its principal place of business in Maryland; and Melamed resides in New York. *See* ECF 59, at 1–2. Beginning in

---

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[3] The facts are drawn from Expeditors' amended complaint, which the Court "accept[s] as true . . . and construe[s] . . . in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).

March of 2023, "Expeditors began using EZR's services for warehousing space and related distribution and services at the" Facility. ECF 59, at 3 ¶ 8. The "Facility contains freight for four of Expeditors' distribution customers." *Id.* ¶ 7. In March of 2024, Expeditors and EZR entered into a Service Provider Agreement ("SPA"), "pursuant to which EZR agreed to provide warehousing space and related distribution and storage services" at the Facility. *Id.* at 2 ¶ 7. The SPA was to be in effect for one year, and then would continue from year to year until terminated by either party. ECF 59-1 (copy of the SPA dated March 15, 2024), at 2. In January of 2025, "EZR notified Expeditors of its intent not to renew the SPA as of March 15, 2025." ECF 59, at 3 ¶ 10. Although "EZR provided Expeditors with a proposal for new terms of service," those "terms were rejected by Expeditors." *Id.* Nevertheless, from April through August of 2025, Expeditors continued to make payments totaling over $1.2 million to EZR "in accordance with the parties' prior practices and based on the rates provided in the SPA." *Id.* at 3–4 ¶ 11. EZR accepted the payments "without objection," continued to provide Expeditors with access to the Facility, and also "continued to provide related distribution and storage services to Expeditors." *Id.* at 4 ¶ 12.

"On August 22, 2025, EZR sent a demand to Expeditors for alleged past due amounts" totaling over $1.5 million. *Id.* at ¶ 23. According to Expeditors, the basis for this demand is "unknown." *Id.* Then, on September 2, 2025, EZR suddenly denied Expeditors' employees access to the Facility. *Id.* at 5 ¶ 17. At that time, property owned by Expeditors' clients—Smiths Devices, Hammond, Mitac, and Ori Biotech—was stored at the Facility, totaling approximately $19 million in value. *Id.* at 4 ¶¶ 14–16. EZR also denied Smiths Devices' representatives access to the Facility and to Smiths Devices' property. *Id.* ¶ 18.

The next day, on September 3, 2025, Expeditors filed this action and sought an emergency order to gain access to the Facility. ECF 59, at 5 ¶ 19; *see also* ECF 1 (original complaint); ECF

3

6 (emergency motion). The parties, "each negotiating through counsel, were able to agree to the terms of an" order (the "Agreed Order") granting Expeditors access to the Facility "for a period of 30 days" with an "option to extend" for an additional 30 days. ECF 59, at 5 ¶¶ 20–21; *see also* ECF 9 (Agreed Order). The Agreed Order was entered on September 5, 2025. ECF 9. Pursuant to it, Expeditors was required to pay $235,135.46 per month for access to the Facility, and the "[f]ee itself provided only access to the MD Facility, and no related services." ECF 59, at 6 ¶ 22. Expeditors was also required to "deposit $100,000 into the Court's registry as security for additional damages (if any) to be determined by the Court in due course or by mediation." ECF 9, at 2. Expeditors made the deposit, and the Court has held $100,000 in the registry since September 12, 2025.

Expeditors alleges that after the entry of the Agreed Order, "EZR constantly harassed Expeditors' employees and contractors" while they worked in the Facility. ECF 59, at 6 ¶ 23. Because of this, Expeditors sought an immediate status conference with the Court on October 10, 2025, ECF 12, which the Court held on October 14, 2025. ECF 59, at 6 ¶ 24; *see also* ECF 16. After the status conference, "the parties were temporarily able to resolve the issues raised by Expeditors." ECF 59, at 6 ¶ 24.

On October 17, 2025, counsel for Expeditors received several emails from Melamed, accusing Expeditors of failing to pay a $90,000 deposit, failing to drug test contractors operating heavy machinery, and causing "deterioration" of the Facility. *Id.* at 6–7 ¶ 25. That same day, EZR again locked Expeditors out of the Facility. *Id.* at 7 ¶ 27. When Expeditors was denied access on the morning of October 20, 2025, it filed a motion for contempt. *Id.* ¶ 28; ECF 17 (motion for order to show cause for contempt); ECF 18 (memorandum in support). Then, on October 21, 2025, Melamed sent emails to three of Expeditors' customers, "making numerous false accusations and

damaging Expeditors' business relationships with the Customers." ECF 59, at 7 ¶ 29. The allegedly false accusations included drug use by Expeditors-affiliated personnel and failure to remove garbage from the Facility. *Id.* at 8 ¶ 35, at 9 ¶ 40. Expeditors filed a motion for a temporary restraining order and preliminary injunction. ECF 21. The Court held a hearing on those motions and the motion for contempt, and the parties then agreed to the terms of an amended agreed order. ECF 59, at 11 ¶ 45; ECF 45 (order amending the agreed order). Pursuant to the amended order, EZR agreed to provide Expeditors with access to the Facility until November 7, 2025. ECF 59, at 11 ¶ 46.

Prior to vacating the facility, Expeditors noticed that some business records belonging to Expeditors' client, Hammond, were missing from the Facility. *Id.* ¶ 47. Expeditors alleges that prior to being locked out in October of 2025, Hammond's records were located "near a portion of the [] Facility controlled by EZR." *Id.* ¶ 48. After the lockout, Hammond's records were missing. *Id.* According to Expeditors, "the Hammond Records remain missing" to date. *Id.* ¶ 49.

On December 29, 2025, Defendants filed their motion to dismiss, ECF 64, and EZR also filed its counterclaims, ECF 65. On January 20, 2026, Expeditors filed a partial motion to dismiss the counterclaims. ECF 70. Then, on January 23, 2026, EZR filed a motion for disbursement of funds, ECF 73, and on February 6, 2026, Expeditors filed a cross-motion for release of the funds, ECF 76. These motions are all fully briefed.

On March 9, 2026, Michael Lentz, Jaime Luse, Jessica Bustamente, and Tydings & Rosenberg LLP moved to withdraw as counsel for both EZR and Melamed. ECF 82. The motion was granted, and Melamed now proceeds pro se. ECF 84. However, because EZR can appear in this court only through a licensed attorney, *see* Loc. R. 101.2(b) (D. Md. 2025), the Court ordered EZR, by April 8, 2026, to either have new counsel enter an appearance on its behalf or show cause

why default should not be entered against it and its counterclaims dismissed. ECF 84, at 1. Through former counsel, the Court subsequently received an email from Melamed averring that "[Expeditor's] release [of] the escrow funds to EZR" is "a critical step" and alleging that EZR and Melamed cannot "proceed as expected" without the release of the funds. ECF 86-1, at 1.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(2)

"[A] Rule 12(b)(2) challenge" to personal jurisdiction "raises an issue for the court to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Id.* "[A] court has broad discretion to determine the procedure that it will follow in resolving a Rule 12(b)(2) motion." *Id.* at 268. "[N]either discovery nor an evidentiary hearing is required in order for the court to resolve a motion under Rule 12(b)(2)." *Jones v. Mut. of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 544 (D. Md. 2022). "When 'the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or [it] may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question.'" *Id.* (quoting *Combs*, 886 F.2d at 676).

"When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a prima facie case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). "This 'prima facie case' analysis resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* "The court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal

6

jurisdiction over the party challenging jurisdiction." *Aerotek Inc. v. Babcock & Wilcox Solar Energy, Inc.*, Civ. No. JRR-24-177, 2024 WL 4792116, at *2 (D. Md. Nov. 14, 2014) (citing *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018)). In resolving a motion brought under Rule 12(b)(2), "a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (citing *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)).

## B.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

7

**C.**   **Federal Rule of Civil Procedure 55(a)**

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The Court may conduct hearings or make referrals when necessary to determine the damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). Thereafter, the court may enter default judgment at the plaintiff's request and with notice to the defaulting party. *Id.*

Although the United States Court of Appeals for the Fourth Circuit has announced a "strong policy" in favor of deciding cases on their merits, *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment may be appropriate when a party is unresponsive. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). A plaintiff, however, is not automatically entitled to default judgment simply because the defendant has not responded. Rather, entry of default judgment is left to the sound discretion of the court. *See, e.g., Choice Hotels Int'l, Inc. v. Jai Shree Navdurga, LLC*, Civ. No. DKC-11-2893, 2012 WL 5995248, at *1 (D. Md. Nov. 29, 2012); *see also Choice Hotels Int'l, Inc. v. Austin Area Hospitality, Inc.*, Civ. No. TDC-15-0516, 2015 WL 6123523, at *1 (D. Md. Oct. 14, 2015).

**III.   ANALYSIS**

**A.   EZR and Melamed's Motion to Dismiss (ECF 64)**

The Court first addresses EZR and Melamed's motion to dismiss, ECF 64, which was filed at a time when both parties had counsel.

1.    Melamed's 12(b)(2) Motion

Melamed argues that this Court lacks personal jurisdiction over him as he is domiciled in New York and did not engage in conduct directed at Maryland. ECF 64-1, at 6. "Absent consent, the exercise of personal jurisdiction must comport with the requirements of the Due Process Clause: valid service of process, as well as . . . minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020) (internal quotation marks omitted) (quoting *Hawkins*, 935 F.3d at 228). "The nature and quantity of forum-state contacts required depends on whether the case involves the exercise of 'specific' or 'general' jurisdiction." *Id.* "General jurisdiction permits the court to hear any and all claims against the defendant, regardless of where the claims arose or the plaintiff's citizenship." *Id.* It "may be exercised when the defendant has contacts with the forum jurisdiction that are 'so constant and pervasive as to render it essentially at home in the forum State.'" *Id.* at 131–32 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). For "an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG*, 571 U.S. at 137. Here, Expeditors does not suggest that Melamed is domiciled in Maryland or that the Court has general jurisdiction over him. ECF 67, at 6. Expeditors instead argues that personal jurisdiction is proper based on Melamed's allegedly tortious conduct directed at the Facility located in Maryland. *Id.* at 5. Accordingly, the Court will confine its analysis to whether it has specific jurisdiction over Melamed.

"Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Thus, in order for "a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied:

9

(1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.* (citing *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)).

Maryland's long-arm statute is codified at Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 6-103(b). The statute "limits specific jurisdiction to cases where the cause of action 'aris[es] from any act enumerated in the statute itself.'" *Phillips v. Brit. Airways*, 743 F. Supp. 3d 702, 711 (D. Md. 2024) (alteration in *Phillips*) (quoting CJP § 6-103(a)). Such acts include, in relevant part, "caus[ing] tortious injury in the State by an act or omission in the State," or "caus[ing] tortious injury in the State or outside of the state by an act or omission outside the State if he regularly does or solicits business," or "engages in any other persistent course of conduct in the State[.]" CJP §§ 6-103(b)(3)–(4). "Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Carefirst of Md.*, 334 F. 3d at 396 (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977)). "The statutory and constitutional requirements thus 'ultimately collapse into virtually the same analysis.'" *Bradley v. DentalPlans.com*, 617 F. Supp. 3d 326, 333 (D. Md. 2022) (quoting *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 n.3 (4th Cir. 1993)). "Although the inquiry under the Maryland long-arm statute 'merges with [the] constitutional inquiry,'" the Court still must analyze the long-arm statute. *Id.* (quoting *Dring v. Sullivan*, 423 F. Supp. 2d 540, 544 (D. Md. 2006)).

Where a "defendant does not have sufficient contacts to be at home in the forum, the court may exercise specific jurisdiction if the defendant has continuous and systematic contacts with the forum state and the claims at issue arise from those contacts with the forum state." *Fidrych*, 952

F.3d at 132 (citing *Daimler AG*, 571 U.S. at 126–27). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017). "The Fourth Circuit has formulated a three-part test for use in determining whether there is specific jurisdiction over a defendant. The three prongs are: '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Jones v. Mutal of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 549 (D. Md. 2022) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)). The first prong requires that "personal jurisdiction must be based on an individual's personal contacts with or purposeful availment of the forum state." *Harte–Hanks Direct Mktg./Balt., Inc. v. Varilease Tech. Fin. Group, Inc.*, 299 F. Supp. 2d 505, 513 (D. Md. 2004).

With respect to the Maryland long-arm statute, "a plaintiff must identify a specific Maryland statutory provision authorizing jurisdiction." *Parker v Cartwright*, Civ. No. JRR-23-1628, 2024 WL 622077, at *4 (D. Md Feb. 13, 2024) (quoting *Johns Hopkins Health Sys. Corp. v. Al Reem Gen. Trading & Co.'s Rep. Est.*, 374 F. Supp. 2d. 465, 472 (D. Md. 2005)). Here, Expeditors argues that specific jurisdiction is proper under CJP §§ 6-103(b)(3) and (4). ECF 67, at 2; *see also Parker*, 2024 WL 622077, at *4 (noting the requirement can be satisfied in "a complaint or in opposition to a 12(b)(2) motion"). Expeditors brings two claims against Melamed—defamation (Count V) and tortious interference with business relationships (Count VI).[4] ECF 59, at 16–18. These claims are based on the allegation that on "October 21, 2025,

---

[4] These two claims are also asserted against EZR. ECF 59, at 16–18.

11

Melamed began sending emails . . . to at least three of Expeditors' Customers, making numerous false accusations and damaging Expeditors' business relationships with the Customers." *Id.* at 7; *see also* ECF 59-4 (copies of Melamed's emails to Expeditors' customers).

Melamed is the President and resident agent of EZR. *See* ECF 59, at 1; ECF 59-2, at 7; *see also* Maryland State Department of Assessment and Taxation, Business Entity Search, https://egov.maryland.gov/BusinessExpress/EntitySearch/Business [https://perma.cc/XHK2-AY6U]. "In assessing whether a non-resident corporate officer or agent is subject to personal jurisdiction in the forum state, the general contacts of the company 'are not attributed to a corporate agent for jurisdictional purposes,' but such a corporate agent may be subject to personal jurisdiction in the forum state if that individual 'had sufficient contacts' with the state, 'even if those contacts were made ostensibly on behalf' of the company." *Tsai v. Inspire, Inc.*, Civ. No. TDC-25-1774, 2025 WL 3264127, at *4 (D. Md. Nov. 24, 2025) (quoting *ePlus Tech., Inc. v. Ahoud*, 313 F.3d 166, 177 (4th Cir. 2002)). "A non-resident corporate agent may be subject to personal jurisdiction under the Maryland long-arm statute under the same circumstances." *Id.* (citing *W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1199–200 (4th Cir. 1989)).

i.    *Personal Jurisdiction under § 6-103(b)(3)*

As noted, § 6-103(b)(3) authorizes jurisdiction over any person who "[c]auses tortious injury in the State by an act or omission in the State." CJP § 6-103(b)(3). "Courts have held that this subsection requires that both the tortious injury and the tortious act must have occurred in Maryland." *Hart v. Carver*, Civ. No. JRR-23-3499, 2024 WL 4025837, at *4 (D. Md. Sept. 3, 2024) (citing *Dring*, 423 F. Supp. 2d at 546). While Expeditors alleges that Melamed's emails caused injury in the state, it does not allege that Melamed's injury-causing acts—i.e., sending the emails—occurred in Maryland. Instead, it asserts that "[e]ven assuming the Customer Emails were sent from New York to other jurisdictions, the damaging effects were felt by Expeditors and its

12

customers in Maryland." ECF 67, at 5. But specific jurisdiction under § 6-103(b)(3) may not lie unless the injury-causing act also occurred in Maryland. *Cf. Monbo v. Evans*, Civ. No. GLR-22-1171, 2022 WL 19920467, at *2 (D. Md. Dec. 7, 2022) (finding no personal jurisdiction under § 6-103(b)(3) where defamatory text messages were not alleged to have been sent from Maryland), *aff'd*, No. 23-1010, 2023 WL 3597578 (4th Cir. May 23, 2023). And relevant here, "[h]armful speech *occurs* in the state where the speech originates." *Winter v. Pinkins*, Civ. No. JKB-14-2125, 2014 WL 5500393, at *3 (D. Md. Oct. 29, 2014) (emphasis in original). Expeditors does not allege that Melamed's allegedly harmful emails were sent from Maryland.

Expeditors also argues that personal jurisdiction is proper under § 6-103(b)(3) because "*Melamed* directed the Lockouts, which occurred in Maryland, and which caused damage to Expeditors' business relationships, as asserted in the Complaint." ECF 67, at 5 (emphasis added). While this allegation does not appear in the complaint, *see* ECF 59, at 5 ("EZR denied the Expeditors' employees access to the MD Facility and the Property."), at 7 ("EZR determined that it would again wrongfully lock Expeditors out of the MD Facility . . . ."), Expeditors does point to an email wherein Melamed is accused of "instruct[ing] EZR staff to terminate Expeditors' access to the warehouse," ECF 59-3, at 20. Nevertheless, even if Melamed himself directed the lockouts, personal jurisdiction is still improper under § 6-103(b)(3) as Expeditors fails to allege that any of Melamed's alleged acts in this regard occurred in Maryland. *Cf. Hart*, 2024 WL 4025837, at *5 (finding no personal jurisdiction under § 6-103(b)(3) where the plaintiff did not allege that defendant made any tortious social media posts in Maryland). Accordingly, the Court cannot exercise personal jurisdiction over Melamed under this subsection of Maryland's long-arm statute. *Cf. Aqua Acceptance, LLC v. Pelican Grp. Consulting, Inc.*, Civ. No. JRR-20-2802, 2022 WL 2275465, at *5 (D. Md. June 23, 2022) (finding no personal jurisdiction under § 6-103(b)(3) where

13

the complaint did not allege that a defendant's action of sending letters and correspondence to Maryland occurred within Maryland).

ii    *Personal Jurisdiction under § 6-103(b)(4)*

Section 6-103(b)(4) provides a basis for personal jurisdiction over any person who "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." CJP § 6-103(b)(4). "[J]urisdiction under § 6–103(b)(4) 'has been found by some judges to have the attributes of general jurisdiction.'" *Micro Focus (US), Inc. v. Am. Exp. Co.*, Civ. No. PWG-14-2417, 2015 WL 3441991, at *4 (D. Md. May 27, 2015) (quoting *Gimer v. Jervey*, 948 F.2d 1280, 1991 WL 237931, at *3 (4th Cir. 1991)). "[E]ven those judges who conclude that establishing a persistent course of conduct under section 6–103(b)(4) is not tantamount to establishing general jurisdiction, nonetheless agree that § 6–103(b)(4) require[s] greater contacts that those necessary to establish jurisdiction under other subsections of Maryland's long-arm statute." *Id.* (citation modified); *see also Johnson v. House of LaBeija LLC*, Civ. No. MJM-24-71, 2026 WL 858120, at *7 (D. Md. Mar. 30, 2026) ("While subsection (b)(4) extends jurisdiction to certain tortious acts that occur outside of Maryland, it requires greater contacts than those necessary to establish jurisdiction under other subsections of Maryland's long-arm statute." (citation modified)).

As noted, Expeditors alleges that Melamed caused tortious injury in Maryland by sending defamatory emails to Expeditors' customers. ECF 67, at 4. However, there is no allegation that Melamed derives any revenue from "goods, food, services, or manufactured products used or consumed in the State." *See* CJP § 6-103(b)(4). Therefore, whether personal jurisdiction over Melamed exists based on subsection (b)(4) of the long-arm statute turns on whether Melamed

14

"regularly does or solicits business" in Maryland or "engages in any other persistent course of conduct in the State." *See id.*

Expeditors argues that Melamed regularly does or solicits business in Maryland because he "own[s] a company which leases and operates the MD Facility." ECF 67, at 5. While EZR unquestionably does business in Maryland, Melamed's ownership of EZR does not necessarily mean that Melamed himself does business in Maryland. "It is an accepted legal tenet . . . that an individual and a corporation of which that individual is the principal are separate legal entities." *Stokes v. JPMorgan Chase Bank, NA*, Civ. No. JFM-11-2620, 2012 WL 527600, at *4 (D. Md. Feb. 16, 2012); *see also Birrane v. Master Collectors, Inc.*, 738 F. Supp. 167, 169 (D. Md. 1990). And "mere ownership of a company does not confer personal jurisdiction over the owner." *Waskey v. O'Neal*, Civ. No. PX-18-2824, 2019 WL 2502389, at *4 n.4 (D. Md. June 17, 2019) (citing *Stokes*, 2012 WL 527600, at *4); *see also Sibert v. Flint*, 564 F. Supp. 1524, 1529 (D. Md. 1983) ("The acts of a corporate representative, transacting corporate business, are not a basis for the exercise of personal jurisdiction over the corporate representative in his individual capacity."). Further, Expeditors' conclusory assertion that Melamed "regularly transacts business in" Maryland is insufficient. ECF 59, at 2; ECF 67, at 5; *see also Murray v. Bierman, Geesing, Ward & Wood, LLC*, Civ. No. RWT-11-1623, 2012 WL 4480679, at *1 (D. Md. Sept. 27, 2012) ("Conclusory statements or bare allegations alone are insufficient to establish personal jurisdiction."). Expeditors "must allege specific facts connecting [Melamed] with the forum." *Lolavar v. de Santibanes*, 430 F.3d 221, 230 (4th Cir. 2005). Outside of Melamed's role as an owner of EZR, Expeditors fails to proffer any facts to show that Melamed, as an individual, regularly does business in Maryland. *Cf. Kogok Corp. v. Johnson*, Civ. No. CV DKC-06-0862, 2006 WL 8457068, at *6 (D. Md. Oct. 12, 2006) (finding personal jurisdiction over an individual

15

owner of corporations improper where the plaintiff only alleged that the individual defendant "authorized facsimile transmissions to Maryland" and "the transmissions originated from Michigan").

Expeditors does not argue that Melamed has engaged in a persistent course of conduct in Maryland. *See* ECF 67, at 5. Nevertheless, given Melamed's ownership of EZR and his allegedly personal involvement in the tortious conduct outlined in the operative complaint, the Court examines this issue and concludes that Expeditors has failed to allege sufficient facts to show that Melamed engaged in any persistent course of conduct in the state. Maryland courts have not clearly defined the term "persistent course of conduct" as it relates to the state's long-arm statute, but Maryland's highest court has observed that the term to have a "relatively flexible quality." *Pandit v. Pandit*, 808 F. App'x 179, 186 (4th Cir. 2020) (quoting *Geelhoed v. Jensen*, 352 A.2d 818, 822 (Md. 1976)). "[T]he Fourth Circuit, interpreting Maryland law, has held that the standard requires that 'the contacts resulting from the conduct must be continuous over a long period of time.'" *Fidelis Cybersecurity, Inc. v. Partner One Cap., Inc.*, 771 F. Supp. 3d 614, 633 (D. Md. 2025) (quoting *Pandit*, 808 F. App'x at 187). "Personal jurisdiction under § 6-103(b)(4) typically requires that a defendant had contacts with the State of Maryland spanning multiple years and encompassing the fulfillment of multiple contracts." *Id.* "In other instances, courts have declined to exercise personal jurisdiction under § 6-103(b)(4) where contact consisted of a handful of emails or phone calls over a period of only a few months." *Id.* (collecting cases).

Here, the facts presented by Expeditors are insufficient to support a prima facie finding that Melamed has engaged in a persistent course of conduct in Maryland. Expeditors' allegations against Melamed involve conduct that occurred over a period of just a few days in October of 2025. Specifically, Expeditors alleges that Melamed sent a "series of bizarre emails" to

Expeditors' counsel beginning on October 17, 2025, ECF 59, at 6, "instructed EZR staff to terminate Expeditors' access to the" Facility on that same day, ECF 59-3, at 10, and then sent allegedly defamatory and damaging emails to Expeditors' customers on October 21, 2025, ECF 59, at 7. Expeditors fails to proffer additional facts showing Melamed engaged in a persistent course of conduct in Maryland "spanning multiple years" or resembling "the fulfillment of multiple contracts." *Fidelis Cybersecurity*, 771 F. Supp. 3d at 633. The only facts before the Court regarding Melamed's Maryland contacts reflect just "handful of emails or phone calls over a period of only a few months." *Id.*; *see also Pandit v. Pandit*, Civ. No. PX-18-1136, 2018 WL 5026373, at *3 (D. Md. Oct. 17, 2018) (holding that "isolated and sporadic association" with Maryland including "sending a handful of emails and letters to individuals in Maryland" did "not amount to a persistent course of conduct"), *aff'd*, 808 F. App'x 179 (4th Cir. 2020).

While EZR and Expeditors have had a business relationship over a number of years, *see* ECF 59-1, at 3 (showing Melamed's signature on the SPA dated March 13, 2024), Expeditors fails to provide any information showing that Melamed himself had any continuing course of conduct in Maryland, whether it be related or unrelated to EZR's business. *See Bass v. Energy Transp. Corp.*, 787 F. Supp. 530, 534 (D. Md. 1992) ("The contacts listed in section (b)(4), however, need not arise from or relate to the plaintiff's cause of action."). Moreover, "[i]t would be anomalous to hold that while defendant has committed no act in Maryland within the meaning of subsection (b)(3), it has engaged in a persistent course of conduct within the meaning of subsection (b)(4)." *Craig v. Gen. Fin. Corp. of Illinois*, 504 F. Supp. 1033, 1037 (D. Md. 1980). As such, Expeditors fails to meet its burden of establishing a prima facie case of personal jurisdiction under § 6-103(b)(4).

### iii.    Constitutional Analysis

The Court is likewise skeptical that the current record supports a constitutional exercise of personal jurisdiction over Melamed. Expeditors contends that "specific jurisdiction is proper when a defendant commits an intentional act expressly aimed at the forum causing harm the defendant knows is likely to be felt in the forum," and cites to *Calder v. Jones*, 465 U.S. 783 (1984) and its "effects test" in support of this argument. ECF 67, at 5. In *Calder*, "the Supreme Court held that a court may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident." *Carefirst of Md.*, 334 F.3d at 397–98 (citing *Calder*, 465 U.S. 789–90). "This 'effects test' of specific jurisdiction is typically construed to require that the plaintiff establish that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Id.* at 398 n.7.

The Fourth Circuit "followed *Calder* closely in *First American First, Inc. v. National Association of Bank Women*, 802 F.2d 1511 (4th Cir. 1986)." *Cole-Tuve, Inc. v. Am. Mach. Tools Corp.*, 342 F. Supp. 2d 362, 367 (D. Md. 2004). In *First American*, the Fourth Circuit held "that allegedly libelous letters, written in Illinois and distributed throughout the country, whose 'primary and most devastating effects' were felt in Virginia, were sufficiently directed at Virginia to allow an exercise of specific jurisdiction there." *Id.* (quoting *First American*, 802 F.2d at 1517). Since then, however, "the Fourth Circuit has seemed to require more than the *Calder* 'effects-test' to hold exercises of jurisdiction over foreign tortfeasors constitutional." *Id.* In *ALS Scan, Inc. v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002), "the Fourth Circuit addressed whether

a 'person electronically transmitting . . . information via the internet to Maryland, causing injury there, subjects the person to the jurisdiction of a court in Maryland.'" *Id.* (quoting *ALS Scan*, 293 F.3d at 712). Judge Niemeyer, writing for a unanimous panel, held that a state may exercise personal jurisdiction over a foreign defendant where the person "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714. Thus, relevant here, "[i]f a defendant is alleged to send a defamatory email while outside of the forum state, there is personal jurisdiction over the defendant if the email is sent to recipients *in the state* and the defendant *knew that the recipients were in the state.*" *Birara v. Kelel*, Civ. No. TDC-17-3241, 2019 WL 3208685, at *4 (D. Md. July 16, 2019) (emphasis added).

Expeditors argues that the *Calder* effects test is satisfied because "Maryland was the focal point of the conduct and the harm," and Melamed expressly aimed his tortious conduct at the forum through his emails that "accused Expeditors of misconduct at the MD Facility, announced restrictions on freight movement tied to the MD facility, and are addressed to specific customers storing freight there." ECF 67, at 5. "Although the place that the plaintiff feels the alleged injury is plainly relevant to the jurisdictional inquiry, it must ultimately be accompanied by the defendant's own sufficient minimum contacts with the state if jurisdiction is to be upheld." *Carefirst of Md.*, 334 F.3d at 401 (citation modified) (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 262 (4th Cir. 2002)). While it is accurate to note that Expeditors alleges it suffered the harm arising out of Melamed's emails in Maryland, the facts proffered in support of personal jurisdiction fail to show that Melamed directed any electronic activity to Maryland. Expeditors is not organized or headquartered in Maryland. ECF 59, at 1. And although its customers who

19

received the allegedly tortious correspondence stored freight in Maryland, Expeditors does not allege that any of these customers are based in Maryland or received the relevant communications in Maryland. *See* ECF 72, at 3 n.1 (arguing that Expeditors does not provide any information regarding "where the customers, or the specific recipients of the email, were located"). Further, Expeditors does not claim that Melamed sent the defamatory emails "to recipients in" Maryland or knew "that [any] recipients were in the state." *See Birara*, 2019 WL 3208685, at *4 ("When the defamatory statement is communicated over the internet, the plaintiff must show that the defendant targeted others in the state, rather than alleging solely that the defendant shared the defamatory statement on the internet and *the plaintiff felt its effects in the state*." (emphasis added)). Accordingly, the Court finds—based on the facts and evidence provided by Expeditors— that exercise of personal jurisdiction over Melamed would not be constitutionally reasonable. *Cf. Kogok Corp.*, 2006 WL 8457068, at *6 (finding "limited contacts" such as "the sending of fewer than a half-dozen facsimiles" did "not show that Defendant purposefully availed himself of the privilege of conducting business in Maryland"). As Expeditors has failed to establish specific personal jurisdiction over Melamed, all claims against Melamed must be dismissed to be raised again, in ever, in the proper forum.

2.    EZR's 12(b)(6) Motion[5]

EZR moves to dismiss Expeditors' unjust enrichment (Count II), tortious interference with contract (Count IV), and tortious interference with business relationships (Count VI) claims pursuant to Rule 12(b)(6). ECF 64-1, at 8. The Court addresses each claim in turn.

---

[5] "Sitting in diversity, a federal court applies the substantive law of the forum state, which, in this case, is Maryland." *Dominion Financial Services, LLC v. Pavlovsky*, 673 F. Supp. 3d 727, 741 (D. Md. 2023); *see also* ECF 59, at 2 (alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)). Neither party disputes that Maryland's substantive tort and contract law applies to Expeditors' claims. *See, e.g.*, ECF 64-1, at 9–13.

### i.   Unjust Enrichment (Count II)

"A claim for unjust enrichment has three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit without the payment of its value." *Singh v. Lenovo (United States) Inc.*, 510 F. Supp. 3d 310, 328 (D. Md. 2021) (citing *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007)). "[A] claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000) (quoting *FLF, Inc. v. World Publications, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998)). That is because unjust enrichment is a quasi-contractual cause of action, intended "to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided." *Id.* (quoting *Dunnaville v. McCormick & Co.*, 21 F. Supp. 2d 527, 535 (D. Md. 1998)). But "[w]hile an action for unjust enrichment is typically not available where the claim is governed by an express contract, exceptions apply in instances [ ] where 'there is evidence of fraud or bad faith, there has been a breach of contract or a mutual recission of the contract, when recission is warranted, or when the express contract does not fully address' the entire subject matter of the claim." *FTI Consulting, Inc. v. Orszag*, Civ. No. BAH-23-3200, 2025 WL 2085761, at *12 (D. Md. July 24, 2025) (quoting *Cnty. Comm'rs of Caroline Cnty.*, 747 A.2d at 608–09).

Expeditors rests its unjust enrichment claim on the $235,135.46 fee that Expeditors paid EZR pursuant to the Agreed Order for access to the Facility from September 8 to November 6, 2025.[6]   ECF 59, at 12; *see also* ECF 9, at 1–2.  EZR contends, and Expeditors does not dispute,

---

[6] Expeditors added this claim in their amended complaint, which was filed after the Agreed Order was entered in this case. *See* ECF 59; ECF 9.

that the Agreed Order, as a consent order, is considered a valid contract. ECF 64-1, at 9–10; ECF 67, at 7; *see also In re Baltrotsky*, Civ. No. DKC-2004-2643, 2004 WL 2937537, at *5 (D. Md. Dec. 20, 2004) (describing a consent order as a contract). EZR therefore argues that Expeditors' unjust enrichment claim must be dismissed "because an express agreement between the parties"—the Agreed Order—governs the scope of the claim. ECF 64-1, at 10.

Expeditors sets forth three main arguments opposing dismissal of its unjust enrichment claim. First, it argues that the Agreed Order "did not provide for comprehensive warehousing services" and thus did not "'fully address' the subject matter of the parties' business relationship." ECF 67, at 7. But whether the Agreed Order addressed the subject matter of the parties' *business relationship* is irrelevant. The Agreed Order covers the scope of the unjust enrichment *claim* because it governs the parties' obligations with respect to the fee and "access to the MD Facility, use of computers and inventory systems, forklifts, and insurance." ECF 9, at 1–2. Whether EZR was required to provide "comprehensive warehousing services" during the period at issue is subject matter governed by the Agreed Order. *Cf. First Flight Ltd. P'ship v. All. Tech. Grp., LLC*, Civ. No. TDC-18-0720, 2019 WL 343250, at *2 (D. Md. Jan. 28, 2019) (finding that a lease and business agreement addressed the subject matter of an unjust enrichment claim where the plaintiff sought to recover a rent payment and the lease and business agreement had provisions governing the payment of that rent). Because there is an express contract governing the claim, an unjust enrichment claim is unavailable unless an exception applies.

Expeditors argues that the bad faith exception applies because EZR acted in "bad faith leading up to the entry of the Agreed Order." ECF 67, at 7. But to sustain an unjust enrichment claim under this circumstance, Expeditors must allege EZR engaged in "fraud or bad faith in the formation of the contract." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593,

608 (D. Md. 2015) (quoting *Jones v. Pohanka Auto N., Inc.*, 43 F. Supp. 3d 554, 573 (D. Md. 2014)). Nowhere in the complaint does Expeditors allege EZR engaged in bad faith while forming that agreement that resulted in the Agreed Order. Instead, the complaint provides that "the parties to this action, each negotiating through counsel, were able to agree to the terms of" the Agreed Order. ECF 59, at 5 ¶ 20. Expeditors thus fails to sufficiently allege that this exception applies.

Expeditors also argues that it "entered into the [Agreed Order] under duress" and so it "is subject to recission." ECF 67, at 7. "The legal standard for establishing 'duress' under Maryland law requires 'a wrongful act which deprives an individual of the exercise of his free will.'" *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 859 (D. Md. 2009) (quoting *Eckstein v. Eckstein*, 379 A.2d 757, 761 (Md. App. 1978)). "There are generally two type of cases in which Maryland courts have found an agreement was made under duress, physical inducement and improper threat." *Wilson v. Ocwen Loan Servicing LLC*, Civ. No. GLR-13-1176, 2013 WL 5276543, at *7 (D. Md. Sept. 18, 2013) (citing *Emp'rs Ins. of Wausau v. Bond*, Civ. No. HAR–90–1139, 1991 WL 8431, at *2 (D. Md. Jan. 25, 1991)), *aff'd*, 561 F. App'x 253 (4th Cir. 2014). "An improper threat is found where the threat 'leaves the victim with no reasonable alternative other than to execute the agreement.'" *Id.* (quoting *Bond*, 1991 WL 8431, at *2). "This form of duress most often arises . . . in the form of economic duress." *Id.* (quoting the same).

While Expeditors alleges that EZR engaged in a wrongful act by locking it out of the Facility prior to the Agreed Order, there is no allegation present in the complaint that Expeditors was deprived of its free will in forming the Agreed Order. For example, Expeditors does not claim that there was any physical inducement or improper threat. *See* ECF 67, at 8 (arguing that "EZR's unlawful action of initiating the First Lockout effectively left Expeditors with no reasonable alternative when it decided to agree to the terms of the Agreed Order"). Instead, Expeditors

expressly alleges in the amended complaint that "the parties to this action, each negotiating through counsel, were able to agree to the terms of" the Agreed Order. ECF 59, at 5 ¶ 20. Even if Expeditors felt it had "no reasonable alternative when it decided to agree to the terms of the Agreed Order," ECF 67, at 8, Expeditors still "maintained [its] right to exercise [its] free will throughout the negotiation" and does not allege otherwise. *See TECH USA*, 592 F. Supp. 2d at 859 ("Even if Mr. Evans rightly believed that his professional interests required him to accede to TECH USA's terms, he maintained his right to exercise his free will throughout the negotiation."). Because the agreement regarding access to the Facility is subject to an express contract and no exception applies, Expeditors' unjust enrichment claim must be dismissed.

### ii.    Tortious Interference with Contract (Count IV)

"To establish a claim for wrongful interference with a contract, a plaintiff must demonstrate '(1) [t]he existence of a contract or a legally protected interest between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach or otherwise render impossible the performance of the contract; (4) without justification on the part of the defendant; (5) the subsequent breach by the third party; and (6) damages to the plaintiff resulting therefrom.'" *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 353–54 (4th Cir. 2013) (quoting *Blondell v. Littlepage*, 968 A.2d 678, 696 (Md. 2009)).

Expeditors alleges that "EZR's conversion of the Hammond Records [during the October 2025 second lockout] made it impossible for Expeditors to perform its contracts with Hammond." ECF 59, at 15 ¶ 71. EZR argues that this allegation fails to state a tortious interference with contract claim because it was Expeditors, not Hammond, that breached its contract with Hammond. ECF 64-1, at 11. EZR rests its argument on Judge Chasanow's opinion in *Service 1st Vending, Inc. v. Compass Group USA, Inc.*, Civ. No. DKC-20-3723, 2021 WL 1312906 (D. Md. Apr. 8, 2021). In that case, Judge Chasanow explained that "Maryland caselaw has repeatedly

stressed that it is the defendant's 'intentional inducement of the *third party to breach* or otherwise render impossible the performance of the contract' followed by 'the subsequent breach *by the third party*' that is prohibited as a 'Tortious Interference with Contracts.'" *Service 1st*, 2021 WL 1312906, at *5 (emphasis in *Service 1st*) (quoting *Finley Alexander Wealth Mgmt., LCC v. M&O Mktg., Inc.*, Civ. No. GJH-19-1312, 2020 WL 1322948, at *13 (D. Md. Mar. 20, 2020)). As such, "failure to allege that [the third-party] was even in breach is fatal to this type of tortious interference claim under Maryland law." *Id.* at *4.

Expeditors concedes that Hammond did not breach any contract but contends that "Expeditors' breach of its contract with Hammond was caused by EZR's wrongful interference with the Hammond Records" and urges the Court to permit the claim to "move to discovery." ECF 67, at 9. Expeditors' own allegations establish that it, not a third-party, breached an agreement. "Some states do allow a [d]efendant's induction of a *plaintiff's breach* of an agreement with a third-party to constitute a tortious interference claim. . . . Maryland law, of course, does not recognize this version." *Service 1st Vending, Inc.*, 2021 WL 1312906, at *5 n.6 (emphasis in original) (citation modified); *see also Mofor v. Lyft, Inc.*, No. 1486, Sept. term 2023, 2025 WL 2450881, at *8 (Md. App. Aug. 26, 2025) (describing the elements of a tortious interference with contract claim as including a "breach by the third party"). Accordingly, Expeditors has failed to state a plausible tortious interference with contract claim because Expeditors does not allege that the third-party, Hammond, was induced by EZR to breach its contract with Expeditors, but instead alleges that circumstances resulted in Expeditors breaching its contract with Hammond. *See Maryland Industrial Group, LLC v. Bluegrass Materials Co., LLC*, 2018 WL 3006354, at *7 (Md.

25

App. 2018) ("A claim for tortious interference with contract must fail in the absence of a breach by the third party."). Expeditors' tortious interference with contract claim must be dismissed.[7]

### iii.    Tortious Interference with Business Relationships (Count VI)

Expeditors brings its tortious interference with business relationships claim against both EZR and Melamed. *See* ECF 59, at 17. As the Court has already determined that it lacks personal jurisdiction over Melamed, the Court confines its analysis to whether Expeditors has stated a plausible tortious interference with business relationships claim against EZR. "Under Maryland law, tortious interference with economic relations requires a claimant to show '(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.'" *First Data Merck Servs. Corp. v. SecurityMetrics, Inc.*, 672 F. App'x 229, 236 (4th Cir. 2016) (quoting *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 269 (Md. 1994)).

EZR argues only that Expeditors fails to state the fourth element of its claim. Specifically, EZR contends that "Expeditors has not alleged with any specificity any actual damage or resulting loss with respect to any of its business relationships." ECF 64-1, at 13. But Expeditors identifies three customers that received allegedly defamatory emails, alleges that the emails damaged Expeditors' business relationships with these customers, and alleges a loss of income of $100,000 from those customers resulting from their receipt of the emails. ECF 59, at 7 ¶ 29, at 17. Drawing all reasonable inferences in Expeditors' favor, the Court concludes Expeditors has plausibly alleged, with the requisite specificity, the fourth element of a tortious interference with business

---

[7] As for the argument that the claim should still "move to discovery," ECF 67, at 9, Expeditors provides no legal citation or argument to support its contention that this outcome is warranted when a plaintiff has failed to state a plausible claim.

26

relationships claim. *Cf. Lifestyle Realty, LLC v. Kirn*, Civ. No. MJM-23-629, 2024 WL 3784487, at *9 (D. Md. Aug. 13, 2024) (finding a plausible tortious interference with a prospective economic advantage claim where the plaintiff alleged the nature of the unlawful acts and that those acts "caused [the plaintiff] to lose many of its cultivated business relationships and expected commissions"). Given that EZR does not contest the plausibility of any of the other three elements, the Court finds that Expeditors has adequately stated a tortious interference with business relationships claim.

Accordingly, the motion to dismiss at ECF 64 is granted in part and denied in part. All claims against Melamed are dismissed for lack of personal jurisdiction. Expeditors' unjust enrichment (Count II) and tortious interference with contract (Count IV) claims are dismissed. The following claims against EZR survive: breach of contract (Count I), trover and conversion (Count III), defamation (Count V), and tortious interference with business relationships (Count VI).

### B.    EZR's Counsel

With all claims against Melamed dismissed, EZR is the only remaining Defendant. As previously noted, EZR's counsel moved to withdraw from representation on March 9, 2026. ECF 82. "It 'has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel.'" *J & J Sports Productions, Inc. v. Maryland Food & Entm't, LLC*, Civ. No. ELH-11-3344, 2012 WL 5289790, at *8 (D. Md. Oct. 24, 2012) (quoting *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201 (1993)); *see also* Loc. R. 101.1(a) (D. Md. 2025) ("All parties other than individuals must be represented by counsel."). If, within 30 days of the filing of a motion to withdraw, new counsel has not entered an appearance for a corporate defendant, the Court may take appropriate actions, "including granting the motion to withdraw and dismissing any affirmative claim for relief asserted

by the party and/or directing the party to show cause why a default should not be entered on claims asserted against it." Loc. R. 101.2(b) (D. Md. 2025).

As such, the Court granted counsel's motion to withdraw and ordered EZR to have new counsel enter an appearance by April 8, 2026, or show cause why default should not be entered and EZR's counterclaims dismissed. ECF 84. On March 11, 2026, one of EZR's former counsel, Michael Lenz, informed the Court that he received an email from Melamed purporting to address the show cause order. ECF 86, at 1. Melamed wrote to Mr. Lenz that Expeditors' refusal to "release the escrow funds to EZR . . . has prevented EZR from moving forward with the matter and from completing the necessary steps related to this case" and "[w]ithout the completion of this step, it has been impossible for [EZR and Melamed] to proceed as expected." ECF 86-1, at 1. It is not clear whether Melamed intended for this email to serve as EZR's response to the order to show cause given that Melamed writes that he "respectfully ask[s] the Court to take this matter into consideration." *Id.* Nevertheless, Melamed, as a non-attorney, may not represent EZR in this case, and alleged "economic hardship is no exception to the bar on *pro se* representation of organizations." *Perez v. Silva*, 185 F. Supp. 3d 698, 706 (D. Md. 2016). EZR has not filed on the docket any response to the order to show cause, and new counsel has not entered an appearance on EZR's behalf. The time to do so has long expired.

Without counsel, EZR is not permitted to defend any claims brought against it, nor litigate any counterclaims. *See Induction Therapies, LLC v. Ingenes, LLC*, Civ. No. DKC-21-604, 2023 WL 4407581, at *2 (D. Md. July 7, 2023) ("Because Defendant Ingenes, LLC must be represented by counsel in this court and is not, it has failed to appear and its default will be entered."). Accordingly, EZR's default will be entered, and its counterclaims necessarily dismissed. The

motion to dismiss the counterclaims, ECF 70, will be denied as moot. *Cf. id.* (entering default and dismissing counterclaims based on the defendant's failure to have counsel enter an appearance).

The Clerk will be directed to enter default against EZR, and Expeditors shall file a motion for default judgment with respect to the surviving claims against EZR within twenty-one (21) days after the Clerk enters default.

### C.    Disbursement of Funds (ECF 73; ECF 76)

While still represented by counsel, EZR filed a motion for disbursement of the funds being held in this Court's registry.[8] ECF 73. Along with its opposition to the motion for disbursement, ECF 78, Expeditors filed a cross-motion to release the deposit back to Expeditors, ECF 77. EZR opposes Expeditors' motion and contends that "[t]he Cross Motion is unnecessary" because if "the Court either denies in whole or in part EZR's Motion for Payment, EZR does not dispute that any remaining Deposit funds not distributed to EZR would be returned to Expeditors." ECF 80, at 2. For the reasons stated below, the Court will deny EZR's motion, release the funds back to Expeditors, and deny Expeditors' cross-motion as moot.

EZR argues the $100,000 in funds being kept in this Court's registry should be released to EZR because of damages caused by Expeditors. ECF 73-2, at 2–3. More specifically, EZR contends that Expeditors damaged EZR's forklifts, removed EZR's internet hardware, and forced EZR to incur costs associated with supervising Expeditors' move-out and repairing EZR's network. *Id.* EZR asserts that its damages associated with Expeditors' move out totals $141,788.25, and EZR includes invoices in support of this figure. *Id.* at 6; *see also* ECF 73-3 through ECF 73-12. The invoices submitted are from Eastern Lift Truck Co., Inc. for forklift

---

[8] As discussed above, the $100,000 was deposited by Expeditors in the Court's registry as a term of the Agreed Order, which permitted Expeditors to regain access to the warehouse subject to this and other conditions. *See* ECF 9, at 2.

repair, *see* ECF 73-3 through ECF 73-9; from Onnick Corp. for cable replacement and network repair, *see* ECF 73-10; and from EZR for wages of employees that oversaw Expeditors' move out of the warehouse, *see* ECF 73-11 through ECF 73-12. Also included is an invoice for renewal of Tydings & Rosenberg LLP's ThompsonReuters subscription. ECF 73-5, at 4. Expeditors contends that EZR provides insufficient evidence in support of the purported damages, and that the warehouse sustained "nothing more than minor wear and tear . . . none of which can be conclusively attributed to Expeditors." ECF 77, at 3; ECF 78, at 4–5. Moreover, Expeditors asserts that the "damages" contemplated by the Agreed Order that the $100,000 registry deposit was meant to cover does not include the types of damages asserted by EZR. ECF 78, at 2.

"Under Federal Rule of Civil Procedure 67, money paid into a court registry 'must be deposited and withdrawn in accordance with 28 U.S.C. §§ 2041 and 2042 and any like statute.'" *Bartch v. Barch*, Civ. No. BAH-23-0101, 2024 WL 5146010, at *2 (D. Md. 2024) (quoting Fed. R. Civ. P. 67(b)). "The relevant portion of 28 U.S.C. § 2042 provides that no money deposited into a court registry 'shall be withdrawn except by order of court.'" *Id.* "Courts have recognized that district courts do not have 'carte blanche' to 'dispose of deposited funds as [they] see fit' but must disburse the funds 'to their rightful owner' and 'in accordance with the law.'" *Id.* (quoting *Alstom Caribe, Inc. v. George P. Reintjes Co.*, 484 F.3d 106, 114 (1st Cir. 2007)).

Here, the Court agrees with Expeditors that EZR provides insufficient evidence to support disbursement of the registry funds to EZR. Although EZR provides invoices for certain repairs, it supplies no evidence beyond accusations to support its claim that Expeditors caused any of the alleged damage that resulted in these expenses. *See* ECF 73-2, at 3–5. As another alternative to denying the motion, Expeditors argues that the Court should allow the parties to conduct limited discovery on the purported damages. ECF 78, at 2. EZR agrees to discovery but contends that

30

any discovery on this issue "should proceed in the ordinary course of the litiga[ti]on." ECF 79, at 3. But *no* form of discovery can proceed now that EZR is not represented by counsel and is considered in default. Given that EZR has not provided sufficient evidence to support its claimed damages and "does not dispute that any remaining Deposit funds not distributed to EZR would be returned to Expeditors," ECF 80, at 2, the Court sees no justifiable reason to delay the release of the funds indefinitely. The Court will deny EZR's motion at ECF 73 and release the funds back to Expeditors.[9] Expeditors' cross-motion to release the funds, ECF 77, will be denied as moot.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, ECF 64, is GRANTED in part and DENIED in part. All claims against Melamed are dismissed for lack of personal jurisdiction. EZR's motion for disbursement of funds, ECF 73, is DENIED, and Expeditors' cross-motion for release of funds, ECF 76, is DENIED as moot. The Court will direct the Clerk to release the funds held in the registry back to Expeditors. Because EZR is no longer represented by counsel and did not respond to the Court's order to show cause, the Clerk is directed to enter default against EZR, and its counterclaims are dismissed. The motion to dismiss the counterclaims, ECF 70, is DENIED as moot. Expeditors is directed to file a motion for default judgment with respect to the surviving claims against EZR within twenty-one (21) days after the Clerk enters default.

A separate implementing order will issue.

Dated: June 1, 2026

/s/
Brendan A. Hurson
United States District Judge

---

[9] The Court's decision to release the funds to Expeditors at this time does not preclude EZR from later seeking the alleged damages either in this litigation or otherwise if EZR retains counsel.

31